HUMBOLDT BASIN NEWSPAPERS, INC., CLAYTON F. DARRAH, AND GEORGIA R. DARRAH, APPELLANTS, v. CAL SUNDERLAND, BARBARA SUNDERLAND, MICHAEL SUNDERLAND, AND WINNEMUCCA PUBLISHING CO., INC., A NEVADA CORPORATION, RESPONDENTS.

No. 10148

November 30, 1979

603 P.2d 278

*T. David Horton,* Battle Mountain, for Appellants.

*James A. Callahan* and *John M. Doyle,* Winnemucca, for Respondents.

## OPINION

By the Court, Mowbray, C. J.:

Humboldt Basin Newspapers, Inc., Clayton Darrah (now deceased) and Georgia Darrah appeal from the district court's involuntary dismissal, under NRCP 41(b), of their complaint seeking specific performance of an alleged oral contract for the sale of their newspaper or, in the alternative, for an accounting for the period the respondents, Cal, Barbara and Michael Sunderland, were publishing the newspaper, and for an injunction of certain of respondents' actions alleged to be tortious with respect to appellants' business. For the reasons discussed below, we find that the judgment of involuntary dismissal was proper as to the cause of action for an injunction, but error with respect to the causes of action for specific performance or an accounting. We therefore affirm in part and reverse in part, and remand for further proceedings in the district court.

In October, 1971, Clayton and Georgia Darrah advertised for the sale of their weekly paper, the Humboldt County Bulletin, in a trade publication. Through the services of a broker, respondent Cal Sunderland was put in contact with the Darrahs. After some negotiations between Sunderland and the Darrahs, Sunderland was put in possession of the Bulletin. Thereafter, Sunderland, along with his wife and son, published the Bulletin for six weeks in December, 1971, and January, 1972, during which period the Sunderlands were introduced to the community by the Darrahs as the "new owners" of the Bulletin. It is undisputed that, during their publication of the

Bulletin, the Sunderlands had orally agreed to pay all expenses of the paper and to retain all earnings. When the Darrahs' attorney presented the Sunderlands with a written contract for the sale of the paper, however, the Sunderlands balked. The Sunderlands' attorney had previously referred to "the terms orally agreed upon" for the contract of sale, but they contended in the lower court that no final agreement had been reached, that they had never agreed to assume personal liability on two promissory notes which the paper owed, and that they had always insisted upon written guarantees from the newspaper's creditors and those of the Darrahs that they would never look to the Sunderlands for payment.

When the Sunderlands refused to sign the written contract, the Darrahs demanded the return of the Bulletin. The Sunderlands returned the few items of office equipment which they had used in the Bulletin's office, but they refused to return the office itself or the telephone number.

The Sunderlands proceeded to publish, on the same schedule as they had published the Bulletin, a "new" newspaper, the Humboldt Sun. They used the same business address, telephone number, legal announcements, display advertising and classified advertising that had been used while they were publishing the Bulletin; they used the Bulletin's existing second class mailing privileges to distribute the Sun; and they claimed to be the only newspaper qualified to carry legal announcements in Humboldt County, a position formerly held by the Bulletin. The Sun carried a list of "carryover subscribers", and some advertisers were apparently not informed that there had been any change in ownership or operation from the Bulletin to the Sun.

The Darrahs continued to publish the Bulletin, on a greatly reduced scale, until May, 1972. In March, 1972, they filed an action seeking specific performance of the contract to purchase the paper, damages, an accounting for the period the Sunderlands were in possession of the Bulletin, and seeking an injunction to prevent the Sunderlands from, among other things, using the advertising that had appeared in the Bulletin, slandering the Darrahs' title to being the publishers of the only newspaper entitled to print legal notices in Humboldt County, and representing falsely that the Darrahs were out of business. The case came to trial in July, 1977, by which time Clayton Darrah, who had handled most of the negotiations with the Sunderlands, had died. At the close of appellants' case in chief, respondents moved for involuntary dismissal under NRCP 41(b). The trial court found that there had been no oral contract for the sale of the paper, that an accounting was not

required since there had been no showing of malice on the part of the Sunderlands, and that an injunction should not issue as there was no legal or contractual limit on the Sunderlands' right to start their own newspaper. This appeal ensued.

The standard for evaluting the sufficiency of the evidence to avoid a judgment of involuntary dismissal under NRCP 41(b) is well established: "A motion for involuntary dismissal admits the truth of plaintiff's evidence and all inferences that reasonably can be drawn therefrom, and the evidence must be interpreted in the light most favorable to plaintiff." Gunlock v. New Frontier Hotel, 78 Nev. 182, 183, 184, 370 P.2d 682, 683 (1962) (citations omitted). In the instant case, the trial court found that "there was no meeting of the minds . . . in relation to the contract to purchase with the exception of the contract price." However, the evidence, viewed in the light most favorable to appellants, supports an inference that the Sunderlands agreed to purchase the paper but refused to sign the written contract or to perform their agreement when they realized that they could seize the Bulletin's only assets, the subscription lists, the advertising, and the established community reputation, without paying for them. The truth or falsity of these inferences must be tested, of course, after the presentation of respondents' case; but on the standard of review applicable to the granting of Rule 41(b) motions, it cannot be said that appellants have failed to make out a cause of action.

In a similar case, Rushton v. Tobler, 85 Nev. 503, 457 P.2d 584 (1969), we found that plaintiffs' evidence, which could be read to show that an oral contract to purchase a business had been entered into, the price agreed upon, possession of the business delivered to defendants and operated by them, and an escrow opened to complete the transaction, was "more than ample to defeat a motion for involuntary dismissal under Rule 41(b)." 85 Nev. at 505, 457 P.2d at 585. We consider the instant case to be in the same posture.

Respondents have argued that the terms of the alleged oral agreement were not sufficiently clear to support an action for specific performance. See Evans v. Lee, 12 Nev. 393 (1877). While we express no opinion at this juncture as to what relief, if any, appellants may be entitled to, we note that the district court is not bound to consider only the form of relief requested in the prayer, NRCP 54(c); Smith v. Rahas, 73 Nev. 301, 318 P.2d 655 (1957). It appears from appellants' evidence that during the period the Sunderlands were operating the Bulletin,

pursuant to an oral agreement to publish the paper while sale negotiations were proceeding, they were in an agency or fiduciary relationship with appellants. The Sunderlands' retention of the premises and of advertising copy obtained while they were publishing the Bulletin may have been a breach of their duty to act in the interests of the Bulletin while they were so engaged. *See* Dunfee v. Terwilliger, 15 F.2d 523 (9th Cir. 1926). If the trial court were to find that respondents have in fact received substantially everything they would have obtained from purchasing the Bulletin without actually paying for the paper, it would be within its power, as a court of equity, to intervene to prevent such unjust enrichment or to return the parties, as nearly as possible, to the *status quo ante*. Buckley v. Buckley, 12 Nev. 423 (1877).

Since the appellants' evidence affirmatively shows that the Bulletin itself is defunct, and the remaining owner expressed no desire to return to the publishing business in competition with the now established Humboldt Sun, we consider appellants' cause of action for injunctive relief, against various alleged tortious interferences with the Bulletin's business by the Sunderlands, to have been rendered moot. Judgment of dismissal as to this cause of action was appropriate, and to this extent we affirm the judgment of the district court. We reverse the judgment of the district court with respect to the remaining causes of action and remand with directions to deny respondents' motion for involuntary dismissal under NRCP 41(b).

Finally, we do not address appellants' remaining contentions, relating to the quashing of subpoenas duces tecum, since we view the error, if any, as invited by appellants. Lester v. Leuck, 50 N.E.2d 145 (Ohio 1943).

THOMPSON, GUNDERSON, MANOUKIAN, and BATJER, JJ., concur.