LORETTA SUE ALFORD; STELLA M. COLAGIOVANE-ARCHULETA; JUDY GISLER; SHARON LEE; SHANNON O'ROARK; PATRICIA A. SEAMAN; DEBBIE WOLLAND; RUTH NEIGHOFF; SUSAN M. GAW; AND CAROL BRATCHER, Appellants, v. HAROLDS CLUB, HUGHES PROPERTIES, INC., SUMMA CORPORATION, Respondents.

No. 13420

September 27, 1983          669 P.2d 721

*Davenport & Perry,* Reno, for Appellants.

*McDonald, Carano, Wilson, Bergin, Bible, Frankovich & Hicks,* Reno, for Respondents.

*Michael J. Morrison,* Reno, for Nevada Trial Lawyers Association, Amicus Curiae.

## OPINION

*Per Curiam:*

The instant case presents an appeal from the involuntary dismissal of appellant employees' suit alleging a casino employer improperly imposed a "tip-pooling" agreement in violation of NRS 608.160, a provision restricting an employer's access to employees' tips and gratuities. We hold that the district court correctly concluded that NRS 608.160 does not prohibit an employer from requiring employees to enter into a tip-pooling arrangement such as that imposed in the instant case. We also hold that the district court correctly determined that there was insufficient evidence to support appellants' related claims for wrongful termination, intentional infliction of emotional distress, fraud, conversion, and conspiracy to blacklist appellants from the gaming industry. Accordingly, we affirm the district

court's involuntary dismissal of appellants' complaint pursuant to NRCP 41(b).

This controversy was triggered by a change in employment policy instituted by respondent Harolds Club on January 15, 1980. Prior to that date, Harolds Club allowed its casino dealers to keep tips or gratuities awarded them individually by customers. On January 15, Harolds Club instituted an employment policy change and ordered dealers to "pool" their tips and divide them evenly with other dealers working the same shift. The casino did not retain any part of the pooled tips, although Harolds Club later conceded that as a result of the change it reaped collateral benefits of higher employee morale and lower employee turnovers. Harolds Club was apparently the last of the large casinos in northern Nevada to institute such a pooling policy, which apparently brought the casino into conformity with general gaming industry practice throughout the state.

The change in policy and the business reasons behind it were explained to employees prior to each of the three shifts working on January 15. A number of employees had heard rumors about the impending change and, after consulting with counsel, decided to refuse to comply with the new policy. Nine of the ten appellants accordingly refused to comply with the new policy, and in the period between January 15, 1980 and January 17, 1980, each of these employees was fired for refusing to comply with Harolds Club's pooling policy.[1]

Less than two weeks after the first terminations, appellants filed suit claiming wrongful termination, intentional infliction of emotional distress, fraud, conversion, and conspiracy to blacklist appellants from the gaming industry. Appellants also alleged Harolds Club's tip-pooling policy violated NRS 608.160, a statute which restricts an employer's access to tips and gratuities awarded employees. At trial, the district court concluded that Harolds Club's tip-pooling policy did not violate NRS 608.160, and that there was insufficient evidence of intentional infliction of emotional distress, fraud or conspiracy to blacklist appellants from the gaming industry to present the case to the jury. Accordingly, the district court dismissed appellants' suit pursuant to an NRCP 41(b) motion.

## TIP POOLING AND NRS 608.160

The underlying issue presented in this appeal is whether NRS 608.160 bars Harolds Club from imposing a tip-pooling policy

---

[1]One of the appellants apparently resigned of her own accord rather than await termination.

as a condition of employment. The statute in question provides:

    1.  It is unlawful for any person to:

    (a) Take all or part of any tips or gratuities bestowed upon his employees.

    (b) Apply as a credit toward the payment of the statutory minimum hourly wage established by any law of this state any tips or gratuities bestowed upon his employees.

    2.  Nothing contained in this section shall be construed to prevent such employees from entering into an agreement to divide such tips or gratuities among themselves.

On its face, NRS 608.160 prohibits an employer from "taking" all or part of any tips or gratuities bestowed on his employees. The statute conditions this prohibition, however, by providing that it shall not be construed to prevent employees from agreeing to divide tips among themselves. The issue which must be addressed in the resolution of this appeal is whether NRS 608.160 prohibits the employer from unilaterally imposing a tip-pooling agreement on employees as a condition of their employment, even though the employer does not retain any part of the tips for his own use or reap any direct benefit from the pooling.

We have not had occasion to address whether NRS 608.160 bars an employer from imposing a tip-pooling agreement. However, in Moen v. Las Vegas International Hotel, Inc., 402 F.Supp. 157 (D.Nev. 1975), aff'd, 554 F.2d 1069 (9th Cir. 1977), the court addressed an employee challenge to a tip-pooling policy similar to the one presented in the instant case. The court conducted an extensive review of the legislative history of NRS 608.160 and prior related legislation, and concluded: "The evident purpose and proper interpretation of the statute is that it was enacted to prevent the taking of tips by an employer for the benefit of the employer." 402 F.Supp. at 160. Based on this construction of the statute, the district court concluded that NRS 608.160 did not bar the employer from imposing a tip-pooling agreement among employees as a condition of employment. Id.

Although this court is not bound by a federal district court's interpretation of a Nevada statute, we believe that the interpretation advanced in *Moen* is, in light of the legislative history and well established and commonly known Nevada employment practices, the correct one. Accordingly, the district court did not err when it found that NRS 608.160 did not prohibit

Harolds Club from imposing a tip-pooling policy in the instant case.

## INVOLUNTARY DISMISSAL UNDER NRCP 41(b)

Appellants also maintain that the district court erred in granting Harolds Club's motion for involuntary dismissal pursuant to NRCP 41(b)[2] on their claims for wrongful termination, intentional infliction of emotional distress, fraud, conversion and conspiracy to blacklist appellants from the gaming industry. This argument is without merit.

The standard of review applicable to an involuntary dismissal under NRCP 41(b) is well established. A defense motion for involuntary dismissal pursuant to NRCP 41(b) admits the truth of the plaintiff's evidence and all inferences that reasonably may be drawn therefrom, and the evidence must be interpreted in a light most favorable to the plaintiff. Baley & Selover v. All Amer. Van, 97 Nev. 370, 373, 632 P.2d 723 (1981); Humboldt Basin Newspapers v. Sunderland, 95 Nev. 794, 797, 603 P.2d 278 (1979).

After reviewing the record presented on appeal, we find that even when the evidence presented is viewed in a light most favorable to appellants, the district court did not err in concluding appellants had failed to prove a sufficient case for the matter to go to the jury. See NRCP 41(b). As discussed above, the district court correctly concluded that Harolds Club had the right to impose a tip-pooling policy as a condition of employment. Given that Harolds Club had the right to insist on its employees' participation in a tip-pooling arrangement, it is difficult to see how appellants could have been "wrongfully" terminated when they refused to comply with such a legitimate employment policy. The same conceptual difficulty undercuts appellants' claims for intentional infliction of emotional distress, fraud, and conversion.

---

[2]NRCP 41(b) provides, in pertinent part:

After the plaintiff has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has failed to prove a sufficient case for the court or jury. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

Further, the district court did not err in dismissing appellants' claim for conspiracy to blacklist. As previously noted, appellants' claim of a past and continuing conspiracy to blacklist was filed less than two weeks after they were terminated. At trial, appellants attempted to prove the existence of a conspiracy by offering evidence of events which occurred both before and after the complaint was filed. However, the district court excluded the evidence of events which occurred subsequent to the filing of the complaint. Although the district court may have erred in excluding evidence of events occurring after the complaint was filed which were offered as evidence of a continuing conspiracy, (*see* Cornwell Quality Tools Co. v. C.T.S. Company, 446 F.2d 825 (9th Cir. 1971), *cert. den.,* 404 U.S. 1049, 92 S.Ct. 715 (1972)), the court expressly stated that even had this proffered evidence been admitted, there still would have been insufficient evidence to submit the case to the jury. We have reviewed the record presented, which includes lengthy offers of proof concerning the events occurring after the complaint was filed, and conclude that there was insufficient evidence of a conspiracy presented. The district court therefore did not err in refusing to submit the case to the jury.

Those other issues raised by appellants have been considered, and are without merit. As we conclude the district court did not err in concluding that NRS 608.160 did not bar Harolds Club from instituting the challenged tip-pooling policy, and did not err dismissing appellants' related claims for wrongful termination, intentional infliction of emotional distress, fraud, conversion, and conspiracy to blacklist, we affirm the decision of the district court.