Edward A. COTTER, et al.,
Plaintiff–Appellant,

v.

DESERT PALACE, INC., a corporation licensed and authorized to do business in the State of Nevada, doing business as Caesar's Palace, doing business as Caesar's Palace Hotel & Casino, and DOES I through X, inclusive, Defendant–Appellee.

No. 88–15084.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 5, 1989.

Decided July 28, 1989.

Oscar B. Goodman, Las Vegas, Nev., for plaintiff-appellant.

Paul R. Hejmanowski, Rick D. Roskelley, Lionel, Sawyer & Collins, Las Vegas, Nev., for defendant-appellee.

Before FARRIS, THOMPSON and TROTT, Circuit Judges.

FARRIS, Circuit Judge:

Plaintiffs appeal from an order denying their motion for a preliminary injunction. We affirm.

## BACKGROUND

The plaintiffs are professional dice dealers at Caesar's Palace Casino in Las Vegas. The dealers work in crews of four, with each crew assigned to one dice table per shift. They are paid hourly wages by the casino and receive customer tips, or "tokes."

Prior to March 1, 1988, there was a long-standing practice at Caesar's of distributing tips on a "crew for crew" basis. At the end of each shift, the four dealers assigned to a given table would pool their tips and divide them equally among themselves. On March 1, 1988, IRS agents entered Caesar's and executed levies upon two dice dealers. That afternoon, Caesar's issued an interdepartmental memorandum changing its tip-distribution policy. Under the new policy, dealers from all shifts are required to group all tips for a twenty-four hour period, and then to divide the total evenly, without regard to the contributions of particular crews.

In order to implement the new policy, Caesar's directed the formation of a "toke committee." On March 20, the dealers elected four representatives to sit on the committee. The dealers also voted to share tokes with sick and vacationing dealers, and to establish a Medical Assistance Plan for dealers with long-term illnesses.

On April 11, the committee informed management that it had decided on a policy of sharing tips with boxmen—supervisory workers who occasionally fill in for dealers. Caesar's promptly rejected the proposal. On June 27, the casino rejected a proposal by which each dealer would receive a share of tokes proportional to his crew's contribution to the 24–hour pool. The casino has also placed restrictions on how and where the dealers may collect, store, and distribute the tokes.

In mid-April, the committee provided management with a document entitled, "Caesar's Palace Association of Dice Dealers—Policies and Procedures." The document stated that all dealers were "required" to join the Association, and that the object of the Association was to "deal[ ] with the communal concerns of the Dice Dealers that arise in the normal course of employment." The document listed several functions which would be served by the Association, including "[m]eet[ing] with Hotel Management as requested," and "[i]nforming all Dice Dealers of any related policy and/or procedure change." On April

20, the Casino responded with a memo stating that the only requirement of dice dealers was that they pool tips on a 24–hour basis, and divide them in an equitable manner. "The toke committee is required only for the purpose of distributing the tokes and nothing more." "Management does not intend to deal with either the 'Association' or the toke committee with respect to concerns that arise in the normal course of employment or any related policy or procedure change."

On March 7, 1988, 101 of the 116 dice dealers at Caesar's Palace filed suit in Nevada state court, alleging breach of contract, deprivation of civil rights, and the creation of a mandatory labor organization in violation of Nevada's right-to-work laws. N.R.S. § 613.130. Caesar's removed the action to federal district court. On June 18, 1988, the district court denied plaintiff's motion for a preliminary injunction, and granted defendant's motion to dismiss the claims based on Nevada's right-to-work laws. The court held that these claims were preempted by the National Labor Relations Act and were within the exclusive jurisdiction of the NLRB. Plaintiffs appeal from both the denial of a preliminary injunction and the dismissal of their state right-to-work claims.

### SCOPE OF THE APPEAL

■ We have jurisdiction to review the denial of a preliminary injunction pursuant to 28 U.S.C. § 1292(a)(1). Dismissal of portions of a complaint, on the other hand, is an interlocutory order which is generally not reviewable unless the trial court certifies it as final under Fed.R.Civ.P. 54(b). *Atterbury v. Carpenter*, 310 F.2d 126 (9th Cir.1962). The district court specifically refused to certify its dismissal of the right-to-work claims as a final order. Plaintiffs argue that we may nonetheless review the dismissal because it is inseparably intertwined with the decision to deny preliminary injunctive relief.

Plaintiffs rely on *Marathon Oil Co. v. United States*, 807 F.2d 759 (9th Cir.1986), *cert. denied*, 480 U.S. 940, 107 S.Ct. 1593, 94 L.Ed.2d 782 (1987), where we held that an interlocutory ruling on the merits, although normally unappealable, was "inextricably bound up" with the grant of preliminary injunctive relief, and therefore could properly be reviewed on appeal from the grant of the preliminary injunction. 807 F.2d at 764.

The rationale of *Marathon Oil* does not apply. In order to *grant* a preliminary injunction, a court must first decide that the underlying claim has some chance of success. In that sense, a grant of preliminary relief necessarily addresses the merits—albeit under an attenuated standard. By contrast, a court may *deny* preliminary injunctive relief on grounds entirely unrelated to the merits of the underlying claim: adequacy of monetary relief; a balance of hardships tipping in favor of the nonmoving party. The denial of preliminary relief is thus not *inextricably* intertwined with an interlocutory ruling on the merits, and there are therefore no compelling reasons to depart from the final judgment rule. We consider the merit of plaintiffs' right-to-work claims only as an incident to our review of the denial of preliminary injunctive relief.

### STANDARD OF REVIEW

■ "In this circuit, preliminary injunctive relief is available to a party who demonstrates either (1) a combination of probable success and the possibility of irreparable harm, or (2) that serious questions are raised and the balance of hardships tips in its favor." *Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935, 937 (9th Cir. 1987). "As an 'irreducible minimum,' the moving party must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation." *Id.* The moving party must also demonstrate at least "a significant threat of irreparable injury." *Id. See also Apple Computers, Inc. v. Formula International, Inc.*, 725 F.2d 521, 526 (9th Cir.1984); *City of Anaheim, California v. Kleppe*, 590 F.2d 285, 288, n. 4 (9th Cir.1978). The denial of a preliminary injunction is reviewed for abuse of discretion. *Zepeda v.*

*United States,* 753 F.2d 719, 724 (9th Cir. 1983).

## POSSIBILITY OF IRREPARABLE INJURY

Plaintiffs have identified a number of ways in which they may be injured by the tip-distribution policy: heavily-tipped dealers will be forced to subsidize lightly-tipped dealers; forced sharing may destroy the dealers' incentives or discourage customers from making tips; some dealers may be deprived of a once-in-a-lifetime tip from a long-term customer who gets hot at the craps tables, some dealers may be fired for refusing to comply with the new policy. Each of these potential injuries is purely monetary. If the new policy is ultimately found to be unlawful, a dealer will be able to establish the amount of his loss by keeping records of how much his particular crew collects in tips after March 1, 1988. Injuries compensable in monetary damages are "not normally considered irreparable." *Los Angeles Memorial Coliseum Com. v. National Football League,* 634 F.2d 1197, 1202 (9th Cir.1980). Because plaintiffs have not shown a significant possibility of irreparable injury, it was not an abuse of discretion to deny preliminary injunctive relief.

## FAIR CHANCE OF SUCCESS ON THE MERITS

The denial of preliminary relief is also appropriate because plaintiffs have not demonstrated a "fair chance of success on the merits," or "questions serious enough to require litigation."

### 1. *Breach of Contract*

Plaintiffs claim that prior to March 1, 1988, Caesar's made express and implied guarantees that dice dealers would be able to split tips on a crew for crew basis, and that the casino's unilateral decision to require 24–hour pooling constitutes a breach of contract. At the same time, plaintiffs do not deny that they are at-will employees —they are working *without* a contract. Unless the casino's decision to require 24–hour pooling violates express statutory pro-visions or offends a defined public policy, *see, e.g., Hansen v. Harrah's,* 100 Nev. 60, 675 P.2d 394 (1984), plaintiffs' claim for breach of contract must fail.

Nevada recognizes the common law doctrine of employment at-will. *K Mart Corp. v. Ponsock,* 732 P.2d 1364 (Nev. 1987). The doctrine provides that "employment for an indefinite term may be terminated at any time for any reason or for no reason by either the employee or the employer without legal liability." *Southwest Gas Corp. v. Ahmad,* 99 Nev. 594, 596, 668 P.2d 261 (1983) (Justice Steffen, dissenting). An employer privileged to terminate an employee at any time necessarily enjoys the lesser privilege of imposing prospective changes in the conditions of employment. *Albrant v. Sterling Furniture Co.,* 85 Or. App. 272, 736 P.2d 201, *review denied,* 304 Or. 55, 742 P.2d 1186 (1987). Caesar's was justified in changing the procedures by which its employees receive tips, provided that the new procedure—forced 24–hour pooling—does not violate Nevada law or policy.

Nevada law recognizes the authority of an employer to require its employees to pool tips as a condition of employment. *Alford v. Harolds Club,* 99 Nev. 670, 669 P.2d 721 (1983); *Moen v. Las Vegas International Hotel, Inc.,* 402 F.Supp. 157 (D.Nev.1975), *aff'd,* 554 F.2d 1069 (9th Cir. 1977). In *Alford,* nine employees who were fired after refusing to participate in "crew for crew" tip-sharing brought suit for wrongful termination. The Nevada Supreme Court held: "Given that Harolds Club had the right to insist on its employees' participation in a tip-pooling arrangement, it is difficult to see how appellants could have been 'wrongfully' terminated when they refused to comply with such a legitimate employment policy." *Alford,* 669 P.2d at 724.

Forced tip-sharing does not violate Nevada law or policy so long as the employer does not "retain any part of the tips for his own use or reap any direct benefit from the pooling." *Id.* at 723. *See* N.R.S. § 608.160. Caesar's was therefore privi-

leged to impose forced tip-sharing prospectively as a condition of continued at-will employment. The trial court did not abuse its discretion in denying a preliminary injunction.

2. *Mandatory Labor Organization*

Nevada Revised Statute 613.130 provides that it is unlawful for an employer to require as a condition of employment that his employees join a "labor organization." A "labor organization" is defined as:

> any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.

NRS 613.130. Plaintiffs argue that the "toke committee" is a mandatory labor organization in violation of NRS 613.130. Shortly after the trial court denied plaintiffs' motion for a preliminary injunction, a regional director of the NLRB refused to issue an unfair labor practice complaint against Caesar's Palace for its role in forming the toke committee. The director concluded that the committee was not a "labor organization," and the NLRB dismissed plaintiffs' appeal on the same ground. We need not and do not consider the decisions by the NLRB for purposes of this appeal. Based on our own review of the record, we conclude that it was not an abuse of discretion to deny preliminary relief on plaintiffs' right-to-work claims.

The record does not reflect that the toke committee exists for the purpose of "dealing with" casino management. Caesar's has required a certain division of tips, and has given the committee authority to work out the details. When the committee has made proposals outside of this narrow context, the proposals have simply been rejected. The casino has refused to entertain serious discussion. Where an organization is "used as a management tool that was intended to increase company efficiency," it will not be considered a labor organization despite the fact that it may provide some "input in order to solve management problems." *Sears, Roebuck & Co.*, 274 N.L.R.B. 230, 244 (1985).

Plaintiffs have not shown a fair chance of success on their right-to-work claims. We need not decide whether the trial court was correct in holding that the claims were preempted by the NLRA. *See Retail Clerks International v. Schermerhorn*, 375 U.S. 96, 105, 84 S.Ct. 219, 223, 11 L.Ed.2d 179 (1963).

3. *Deprivation of Civil Rights*

Plaintiffs claim that the new tip-distribution policy is actionable under 42 U.S.C. § 1983. In order to succeed on the merits of a section 1983 claim, plaintiffs must show that they were deprived of a federal right, and that Caesar's Palace was acting under color of state law. *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 1732, 56 L.Ed.2d 185 (1978).

Plaintiffs claim that Caesar's Palace was acting under color of state law because it relied on Nevada precedent to support its right to require tip-pooling. Plaintiffs do not have a fair chance of success on this argument. In *Flagg Brothers*, plaintiffs claimed that private warehousemen were acting under color of state law because they relied on the self-help provisions of New York's version of the UCC. The Supreme Court found this fact insufficient to transform private parties into state actors.

## CONCLUSION

The trial court did not abuse its discretion in denying preliminary injunctive relief.

AFFIRMED.