Thomas E. **BARTINIKAS**, Plaintiff and Counter-defendant,

v.

**CLARKLIFT OF CHICAGO NORTH, INC.**, Defendant and Counter-plaintiff.

No. 79 C 5343.

United States District Court, N. D. Illinois, E. D.

Feb. 25, 1981.

---

Mark J. Friedman, James F. Holderman, Sonnenschein, Carlin, Nath & Rosenthal, Chicago, Ill., for plaintiff and counter-defendant.

David E. Zajicek, Paul Simon, Jeffrey Gilbert, McBride, Baker, Wienke, & Schlosser, Chicago, Ill., for defendant and counter-plaintiff.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff, Thomas E. Bartinikas ("Bartinikas"), brought this three-count action against defendant, Clarklift of Chicago North, Inc. ("Clarklift") alleging contract violations and unjust enrichment arising from Bartinikas' employment as a salesman for Clarklift.[1] Clarklift has filed a counterclaim in which it asks the Court for a declaration that a document entitled "Salesman's Agreement and Compensation Policy" governed Bartinikas' employment relationship with Clarklift. This matter is now before the Court on cross motions for summary judgment as to the counterclaim and Clarklift's motion for summary judgment on Count II of plaintiff's complaint.

The following facts are undisputed. In September, 1976, Bartinikas became employed by Clarklift as a commissioned salesman. Bartinikas' employment was governed by an oral agreement which provided for Bartinikas to receive commissions based on equipment sales and leases procured from customers. No agreement regarding the term or duration of plaintiff's employment was reached at any time.

Some time prior to May, 1978, Clarklift tendered a written employment contract embodying new terms and conditions of employment to each of its salespersons, including Bartinikas. Clarklift insisted that each salesperson sign the tendered contract as a condition of continued employment. Bartinikas objected to the terms of the tendered contract and refused to sign it. Bartinikas, however, continued to work as a Clarklift employee and Clarklift continued to pay Bartinikas and to honor and derive profit from all sales and leases procured from customers. On August 8, 1978, Bartinikas gave David Larson, vice-president of Clarklift, thirty days' notice that he would resign from his position effective September 5, 1978.

Bartinikas' employment with Clarklift ended on September 5, 1978, and in October, 1978, Clarklift sent Bartinikas a commission statement detailing his outstanding commissions. After receiving the statement, Bartinikas notified David Larson that he had not been credited with all commissions earned. At a December, 1978, meeting with Larson and during telephone conversations after his resignation, Bartinikas told Larson that he needed payment of his outstanding commissions in order to make a downpayment on a home in Florida.

■ Under Illinois law, which must be applied in this diversity case, an employment relationship that does not specify a time or duration of employment is terminable at will by either employer or employee. *Sargent v. Illinois Institute of Technology*, 78 Ill.App.3d 117, 121, 33 Ill.Dec. 937, 939, 397 N.E.2d 443, 445 (1st Dist. 1979); *Criscione v. Sears, Roebuck & Co.*, 66 Ill.App.3d 664, 667, 23 Ill.Dec. 455, 457, 384 N.E.2d 91, 93 (1st Dist. 1978); *Scaramuzzo v. Glenmore Distilleries Co.*, 501 F.Supp. 727, 732 (N.D. Ill.1980). It is undisputed that Bartinikas' employment relationship with Clarklift was not for a specific time or duration, and therefore his employment was terminable at will.

Clarklift contends, however, that because Bartinikas' employment was terminable at will, Clarklift had the right not only to terminate him at will, but also to unilaterally modify the terms of his employment at will. Thus, Clarklift argues, when Bartinikas was tendered a new, written contract of employment, his only options were to quit or to accede to the new terms. Indeed, Clarklift's argument *goes* even further, contending that even if Bartinikas specifically rejected the unilateral modification, he still

---

1. Jurisdiction is invoked pursuant to 28 U.S.C. § 1332.

would be held to its terms if he continued working. This contention is not only contrary to Illinois law, but it is contrary to the most basic principles of contract law and contrary to modern notions of fairness in the workplace.

In support of its argument, Clarklift relies on three cases. *Gebhard v. Royce Aluminum Corp.*, 296 F.2d 17 (1st Cir. 1961); *Swalley v. Addressograph Multigraph Corp.*, 158 F.2d 51 (7th Cir. 1946), *cert. denied*, 330 U.S. 845, 67 S.Ct. 1086, 91 L.Ed. 1290 (1947); and *Carter v. Kaskaskia Community Action Agency*, 24 Ill.App.3d 1056, 322 N.E.2d 574 (5th Dist. 1974). These decisions hold for the proposition that where the term of employment is at the will of the parties, and the employer modifies the terms of the contract, the employee is bound by the terms of the modification if he fails to reject the modification and continues to work for the employer. This proposition is nothing more than a reiteration of the longstanding common law contract doctrine which recognizes that subsequent to an offer, silence plus additional circumstances may constitute acceptance as a matter of law. As Professor Corbin has stated:

> Frequently, services are rendered under circumstances such that the party benefitted thereby knows the terms on which they are being offered. If he receives the benefit of the services in silence, *when he had a reasonable opportunity to express his rejection of the offer*, he is assenting to the terms proposed and thus accepts the offer. (Emphasis added, footnotes omitted.)

A. Corbin, Corbin on Contracts, § 75 at 121 (One Volume Ed. 1952).

■ This doctrine is entirely consistent with the rule in Illinois that an employer acting *ex parte*, without the consent of the employee, cannot modify the terms of the employment contract. *Sterba v. Blaser*, 33 Ill.App.3d 1, 337 N.E.2d 410, 415–416 (1st Dist. 1975); *Simpson v. Norwesco, Inc.*, 583 F.2d 1007, 1012 (8th Cir. 1978) (applying Illinois law). The only issue is whether the employee assented to the modification. Had Bartinikas remained silent and continued to work for Clarklift after being notified of the proposed modification, the Court and Clarklift could reasonably have presumed that Bartinikas assented to the proposed modification in terms and thus accepted the offer. But Bartinikas did not remain silent. He specifically and repeatedly rejected the modification. Nonetheless, Clarklift asks this Court to ignore the explicit rejection and to presume that Bartinikas accepted the terms of the modification merely because he continued working. To do so would ignore an essential element of contract law: acceptance.[2]

■ Once Bartinikas rejected the modification, Clarklift could have fired Bartinikas, but it could not enforce its modification *ex parte*. *Sterba v. Blaser, supra*. Clarklift, however, chose not to fire Bartinikas, but rather to continue taking advantage of his talents, and by so doing, continued to be bound by the terms of the contract in existence between the parties prior to the proposed modification. Accordingly, Bartinikas' motion for summary judgment on the

2. Moreover, it is not all clear that Clarklift would have been bound by the proposed modification had Bartinikas accepted it. The first page of the Salesman's Agreement and Compensation Policy states as follows: "This Agreement shall be binding upon Clarklift only when approved in writing below by its President or a Vice-President and shall take effect as of the date shown above his signature." It is undisputed that the agreement tendered to Bartinikas was never signed by any Clarklift representative. As such, the tendered contract, in all likelihood, did not constitute an offer. "When one party solicits and receives an order or other expression of agreement from another, clearly specifying that there is to be no contract until ratification or assent by some officer or representative of the solicitor, the solicitation is not itself an offer; it is a request for an offer. The other that is given upon such a request is an offer, not an acceptance." A. Corbin, Corbin on Contracts, § 88 at 136 (One Volume Ed. 1952). The lack of mutuality of obligation contained in the Agreement tendered to Bartinikas takes on added significance in light of the fact that mutuality of obligation provided the legal underpinning for the creation of the at-will doctrine. Note, *Judicial Limitation of the Employment At-Will Doctrine*, 54 St. John's L.Rev. 552, 555 (1980).

counterclaim is granted and Clarklift's motion for summary judgment is denied.

Clarklift also has moved for summary judgment on Count II of plaintiff's complaint. In Count II Bartinikas claims that subsequent to his resignation, Bartinikas had an opportunity to purchase certain real estate in Florida. Because Clarklift refused to pay Bartinikas' commissions, Bartinikas alleges that he was unable to purchase the intended real estate and as a result suffered damages, measured by the "profits" he claims he would have earned had he been able to invest the commissions in the property.

Since *Hadley v. Baxendale*, 9 Ct. of Exch. 341 (1854), it has been established that damages for breach of contract are limited to those that "may reasonably be supposed to have been in the contemplation of the parties, at the time they made the contract, as the probable result of the breach of it." Recent Illinois decisions continue to follow this doctrine:

> When the profits which are sought are those arising out of the breached contract, those profits are considered one of the elements of the contract, and are presumed to have been within the contemplation of the defaulting party at the time he entered into the contract; they are recoverable if proved with reasonable certainty. However, when the profits sought are those which would have arisen only out of a collateral transaction, not only must these profits be proved with reasonable certainty, but also it must be shown that they were reasonably made within the contemplation of the defaulting party when the contract was made. *H. G. Holloway & Bro. v. White-Dunham Shoe Co.*, 151 F. 216 (7th Cir. 1906, Ill.) Notice of the possible existence of collateral profits, given after execution of the contract, will not satisfy this requirement.

*Rivenbark v. Finis P. Ernest, Inc.*, 37 Ill. App.3d 536, 539, 346 N.E.2d 494, 497 (5th Dist. 1976).

It is undisputed that Bartinikas did not inform Clarklift of his investment opportunity until well after the making of the contract. Indeed, Clarklift did not learn of plaintiff's alleged opportunity until after he had left its employ. Since Bartinikas has failed to show that his investment opportunity was within the contemplation of the parties when the contract was made, Bartinikas cannot base a cause of action upon these alleged damages. Accordingly, Clarklift's motion for summary judgment on Count II of plaintiff's complaint is granted. It is so ordered.