901 P.2d 201

**Tamar STIEBER, Plaintiff–Appellant,**

**v.**

**JOURNAL PUBLISHING CO.,**
**d/b/a Albuquerque Journal,**
**Defendant–Appellee.**

**No. 16302.**

Court of Appeals of New Mexico.

May 31, 1995.

Certiorari Denied July 12, 1995.

Ray Twohig, Ray Twohig, P.C., Albuquerque, for plaintiff-appellant.

Jim M. Dines, Martin R. Esquivel, Dines, Wilson & Gross, P.C., Albuquerque, for defendant-appellee.

## OPINION

PICKARD, Judge.

Plaintiff appeals from an order of the trial court granting Defendant summary judgment on Plaintiff's claims for breach of implied contracts and for intentional infliction of emotional distress. The implied contracts were: (1) to promote Plaintiff; and (2) not to discriminate against her. Plaintiff raises four issues in her brief in chief. Because several of these issues are closely related, we address them in the following manner. First, we consider whether the trial court erred in granting summary judgment on the claim for breach of contract to promote Plaintiff. We hold that because Plaintiff's employment contract was terminable at will, she has no cause of action against Defendant for violation of alleged terms of the contract under the circumstances of this case. Second, we consider whether the trial court erred in granting summary judgment on the claim for breach of contract not to discriminate. We hold that because Plaintiff failed to prove the existence of a specific enough contract term governing nondiscrimination, the trial court's grant of summary judgment was not in error. We, therefore, need not reach the issue of whether emotional distress damages were available for the alleged breaches of contracts. Finally, we consider whether the trial court erred in granting summary judgment on the claim for intentional infliction of emotional distress. We hold that because the actions of Defendant were not extreme or outrageous, the trial court's grant of summary judgment was justified. Accordingly, we affirm.

## STANDARD OF REVIEW

Summary judgment is proper only if there are no disputed issues of material fact and the movant is entitled to judgment as a matter of law. *Koenig v. Perez*, 104 N.M. 664, 665, 726 P.2d 341, 342 (1986). When reviewing a trial court's grant of summary judgment, we view the facts in the light most favorable to the party opposing summary judgment, drawing all inferences in

favor of that party. *Baer v. Regents of Univ. of Cal.*, 118 N.M. 685, 687–88, 884 P.2d 841, 843–44 (Ct.App.1994).

## FACTS

Plaintiff was hired by Defendant as a reporter for the Journal North, Defendant's Santa Fe bureau, in May 1989. In April 1990, Plaintiff was awarded a Pulitzer Prize in the specialized-reporting category for her work on a series of articles on the connection between L–Tryptophan and a blood disorder. At the time that she won the Pulitzer Prize, Plaintiff's job description included general assignments, special projects, and medical and arts reporting.

After she received the Pulitzer Prize, Defendant told Plaintiff that she was to be the "'roving northern New Mexico special projects reporter,'" a position that she regarded as a promotion. Plaintiff's job description was changed to northern New Mexico enterprise and general assignment reporter. The description "enterprise reporter" is interchangeable with "projects reporter." Together with the promotion to a projects reporter, Plaintiff was promised that she would receive only occasional daily assignments. Consequently, she would have had the time and flexibility to develop more complex stories than she had previously been able to produce. Project reporting involves long-term stories that require more time than simple daily-events stories. When substantial assignments other than projects are given to a projects reporter, the reporter is severely hindered from doing special projects and is effectively demoted.

Viewing the facts in the light most favorable to Plaintiff, it appears Defendant assigned Plaintiff so many beats and other daily assignments that insufficient time remained for her to research and write special-project stories, contrary to the assurances of fewer daily beats. When she realized that she had less time available for projects, she complained repeatedly. Defendant also assigned projects on which Plaintiff was already reporting to other reporters, manipulated some of Plaintiff's stories so that their impact was lessened, removed Plaintiff's byline from a story, placed her on probation for making a mistake on a story, individually criticized her for her personal use of Defendant's office equipment, and failed to give credit to Plaintiff in an editorial for the Pulitzer Prize that she had won. Plaintiff also alleged specific instances and a pattern of disparate treatment of women and men by Defendant.

At the time of her hiring, Plaintiff signed a form stating that she understood that her "EMPLOYMENT AND COMPENSATION [COULD] BE TERMINATED, WITH OR WITHOUT CAUSE, AND WITH OR WITHOUT NOTICE, AT ANY TIME, AT THE OPTION OF [DEFENDANT] OR [PLAINTIFF]." Plaintiff was also aware of an unofficial handbook, distributed by Defendant, which contained the statement "[Defendant] is an equal opportunity employer."

## DISCUSSION

### Contract To Promote

The first issue in this case revolves around the existence of a contract to promote Plaintiff to the position of projects reporter and Defendant's purported breach of that contract. In New Mexico, if an employment relationship is at will, it can be terminated at any time by either party to the relationship. *Hartbarger v. Frank Paxton Co.*, 115 N.M. 665, 668, 857 P.2d 776, 779 (1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1068, 127 L.Ed.2d 387 (1994). Whether such a relationship has been modified is a question of fact. *Id.* at 669, 857 P.2d at 780.

The theory that Plaintiff urges upon this Court is not that Defendant had altered the employment relationship such that Plaintiff could only be terminated for cause. Rather, Plaintiff refers us to that portion of *Hartbarger* which emphasizes that "[t]he at-will presumption that the employee has no reasonable expectation of continued employment applies only to a single term of an employment relationship—that of the employer's unabridged right to terminate the employee." *Id.* at 672, 857 P.2d at 783. Accordingly, Plaintiff argues, even if Defendant had the right to terminate Plaintiff at any time without cause, if an implied contract to promote Plaintiff had been entered into, then Defendant should be bound by the terms of that

contract. Plaintiff argues that Defendant breached the contract to promote by giving Plaintiff so many daily beat assignments that it was impossible for her to work on special projects, thereby effectively demoting her.

Defendant responds that even if a contract to promote Plaintiff had been entered into, the fact that Plaintiff's employment was at will necessarily implies that Defendant could change the terms of the employment relationship unilaterally and without cause. In support of this proposition, Defendant relies heavily on *Albrant v. Sterling Furniture Co.,* 85 Or.App. 272, 736 P.2d 201, *review denied,* 304 Or. 55, 742 P.2d 1186 (1987), which held that when an employment relationship is at will, "[i]t follows that an employer may also modify the employment contract so long as the modification applies only prospectively. An employe[e] impliedly accepts such modifications by continuing employment after the modification." *Id.* 736 P.2d at 203 (footnote omitted). *See also Cotter v. Desert Palace, Inc.,* 880 F.2d 1142, 1145 (9th Cir.1989). Accordingly, Defendant argues that even if it had promoted Plaintiff, it was entitled to subsequently demote her and that demotion was not actionable as a breach of the prior contract to promote.

We note that jurisdictions other than those to which either Plaintiff or Defendant cited us have considered the question of whether the power to terminate at will necessarily includes the power to modify terms of the employment relationship. Like *Albrant,* some have concluded that, because either party has the power to terminate the relationship at will, if the employee continues to work, then he or she has accepted the proposed modification. *See Gebhard v. Royce Aluminum Corp.,* 296 F.2d 17, 19 (1st Cir. 1961); *see also Facelli v. Southeast Mktg. Co.,* 284 S.C. 449, 327 S.E.2d 338, 339 (1985). Under this rule, accepted in the majority of jurisdictions that have considered the problem, an employer's right to terminate an employee at will necessarily and logically includes what may be viewed as a lesser-included right to insist upon prospective changes in the terms of that employment as condition of continued employment. *Cotter,* 880 F.2d at 1145; *Green v. Edward J. Bet-*

*tinger Co.,* 608 F.Supp. 35, 42 (E.D.Pa.1984), *aff'd,* 791 F.2d 917 (3d Cir.1986), *cert. denied,* 479 U.S. 1069, 107 S.Ct. 960, 93 L.Ed.2d 1008 (1987).

A minority approach, exemplified by one case, *Bartinikas v. Clarklift of Chicago N., Inc.,* 508 F.Supp. 959, 961 (N.D.Ill.1981), holds that if the employee rejects the proposed modification, then the employer can either discharge the employee or abandon the proposed modification. The *Bartinikas* approach focuses on the proposition that there cannot be an effectively modified contract unless there is both an offer of modification by the employer and an acceptance of that modification by the employee. *Id.* at 961. We find that this focus is overly legalistic and does not lend itself to practical application. Although the *Bartinikas* case states that its approach is consistent with "modern notions of fairness in the workplace," *id.,* we find such statement illogical in light of the court's later concession that the employer can fire any employee who does not accept the proposed modification. *Id.* Thus, the *Bartinikas* approach encourages employers to fire employees, an approach that we hardly believe is in accordance with notions of fairness in the workplace. Rather, we adopt the majority approach as more enlightened as well as logical.

In this case, Defendant continued to assign Plaintiff so many beat stories that she was unable to concentrate on special projects. Even if those assignments were incompatible with the previous promotion of Plaintiff, Defendant had the right to insist that Plaintiff perform the daily beat assignments as a condition of her continued employment at will. No breach of contract action may lie where the employer in an at-will employment relationship may prospectively change the conditions of employment at will. The trial court did not err in granting summary judgment to Defendant on the claim of breach of contract to promote Plaintiff.

### Contract Not to Discriminate

Plaintiff also contends that there was a breach of an implied contract not to discriminate against her. The evidence that

she offered as proof of that contract was a statement in Defendant's unofficial handbook that "[Defendant] is an equal opportunity employer." Language that is purported to create an implied term must be sufficiently explicit to give rise to an implied contract. *Hartbarger,* 115 N.M. at 668, 857 P.2d at 779. General policy statements of a non-promissory nature contained in an employee handbook are insufficient to create an implied contract. *Sanchez v. The New Mexican,* 106 N.M. 76, 79, 738 P.2d 1321, 1324 (1987). The statement contained in Defendant's unofficial handbook is just such a "declaration of [D]efendant's general approach to the subject matter discussed," *id.,* and is insufficient to form the basis for a suit for breach of contract. *See Vasey v. Martin Marietta Corp.,* 29 F.3d 1460, 1465–66 (10th Cir.1994); *see also Cucchi v. New York City Off-Track Betting Corp.,* 818 F.Supp. 647, 652 (S.D.N.Y. 1993).

As we hold that the trial court did not err in granting summary judgment on the claims of breach of contract to promote Plaintiff and breach of contract not to discriminate against her, we need not reach the issue of whether emotional-distress damages were available for those alleged breaches.

*Intentional Infliction of Emotional Distress*

The final issue raised in this case is whether the trial court erred in granting summary judgment on Plaintiff's claim of intentional infliction of emotional distress. One of the requirements in a suit for intentional infliction of emotional distress is that the conduct of the defendant be extreme and outrageous. *Hakkila v. Hakkila,* 112 N.M. 172, 175, 812 P.2d 1320, 1323 (Ct.App.), *cert. denied,* 112 N.M. 77, 811 P.2d 575 (1991). Extreme and outrageous conduct, in turn, is that which is " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Phifer v. Herbert,* 115 N.M. 135, 139, 848 P.2d 5, 9 (Ct.App. 1993) (*quoting* Restatement (Second) of Torts § 46, cmt. d (1965)). As a matter of law, Defendant's conduct in this case does

not reach that level. *See Newberry v. Allied Stores,* 108 N.M. 424, 432, 773 P.2d 1231, 1239 (1989); *Sanders v. Lutz,* 109 N.M. 193, 196, 784 P.2d 12, 15 (1989); *Sanchez,* 106 N.M. at 79–80, 738 P.2d at 1324–25. The trial court did not err in granting summary judgment on the claim of intentional infliction of emotional distress.

*CONCLUSION*

The judgment is affirmed.

IT IS SO ORDERED.

BLACK and FLORES, JJ., concur.