[No. B114523. Second Dist., Div. Seven. Nov. 25, 1997.]

VICTOR DiGIACINTO, Plaintiff and Respondent, v.
AMERIKO-OMSERV CORPORATION, Defendant and Appellant.

## COUNSEL

Herbert A. Moss for Defendant and Appellant.

Nkwo N. Cheaney for Plaintiff and Respondent.

## OPINION

LILLIE, P. J.—Defendant (hereinafter referred to as Ameriko-Omserv) appeals from a judgment of the municipal court[1] awarding plaintiff $19,820.40 in damages on his claim for breach of his employment contract as an at-will employee, after Ameriko-Omserv reduced plaintiff's rate of pay. The issue on appeal is whether the employer of an at-will employee is liable for breach of contract when the employer notifies the employee of a prospective change in his rate of compensation and thereafter the employee continues in employment. This appears to be an issue of first impression under California law.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Victor DiGiacinto filed a complaint in the municipal court against his employer, Ameriko-Omserv, for breach of contract, claiming that the employer, unilaterally and without consideration, modified the specific term for compensation in a written employment contract dated August 22,

---

[1] Ameriko-Omserv filed a timely notice of appeal from the municipal court judgment. The appellate department of the superior court, in a unanimous "opinion and judgment" certified for publication and filed on July 8, 1997, reversed the municipal court judgment and remanded with directions to enter judgment in favor of Ameriko-Omserv on the ground that as a matter of law, the old contract was negated and a new contract was created through (1) notice to the plaintiff that his wages would be lowered and (2) by his continued service under the lower wages. The opinion and judgment became final on July 23, 1997. On August 14, 1997, we filed order transferring cause on court's own motion pursuant to California Rules of Court, rule 62(a), stating that transfer of the cause to this court is necessary in order to secure uniformity of decision and to settle important questions of law. General standards of appellate review apply to appeals from municipal courts transferred for decision to the Courts of Appeal. (*Brown* v. *West Covina Toyota* (1994) 26 Cal.App.4th 555, 557, fn. 1 [32 Cal.Rptr.2d 85].)

1994, by instituting a second written employment contract dated January 30, 1995, which became effective February 5, 1995.

At trial, the matter was submitted for decision on the trial briefs and agreed facts, which established the following: In June 1990, plaintiff was first hired by Ameriko Inc.; in 1993, Ameriko and Omserv Corporation formed a joint venture named Ameriko-Omserv to provide maintenance services to NASA at Edwards Air Force Base, and the NASA contract was awarded in December 1993. Thereafter, plaintiff was transferred to the Edwards Air Force Base project and has been employed at that location since that time.

On August 22, 1994, plaintiff signed a letter agreement setting forth the terms and conditions of his employment; the agreement provided for wages at the rate of $23.97 per hour for the position of structural/mechanical supervisor. The agreement also provided that "Length of employment is not guaranteed and may be voluntarily terminated at any time by either party, with or without cause, with or without notice. [¶] This letter constitutes the entire understanding between Ameriko-Omserv and you as to the subject matter herein, and supersedes all other existing, prior or contemporaneous agreements, promises, representations, oral or written, between Ameriko-Omserv and you relating to the subject matter herein."

In December 1994, defendant received a letter from NASA suggesting that as a cost-saving measure, plaintiff's position be eliminated. Instead of terminating plaintiff's employment, defendant elected to reorganize his section, reduce his responsibilities, and reduce his wages. On January 30, 1995, plaintiff was notified in writing that his new rate of pay, effective February 5, 1995, would be $18.00 per hour. Plaintiff was also orally notified about the reduction in his pay. Plaintiff asked that his wages not be reduced, but defendant told him it was the only way to save his job. Plaintiff continued in defendant's employ after February 5, 1995, although he refused to sign the January 30, 1995, letter.

In January 1996, almost one year after receiving the reduced wages, plaintiff filed a complaint in the municipal court for breach of contract damages of $10,268.40, seeking to recover the $5.97 per hour reduction in his rate of pay. He alleged that defendant "unilaterally and without consideration modified the specific terms of the written employment contract dated August 22, 1994, by instituting a second written employment contract dated January 30, 1995 . . . ."

In his trial brief, plaintiff contended that by continuing to work for defendant he "did not expressly or impliedly rescind, repudiate or abandon

his claim for damages for breach of the August 1994 contract." He contended that by continuing to work for defendant, he was mitigating his damages. In its trial brief, defendant contended that plaintiff was an at-will employee whose employment was terminated and who was offered a new contract based on lower prospective compensation; plaintiff's continuation in the employer's employ with knowledge of the lower compensation constitutes the acceptance of the new contract and he had waived any right to claim additional compensation. In its statement of decision the municipal court found that plaintiff was an at-will employee and that defendant had good cause to reduce the rate of compensation, but that "The at-will employment contract does not provide for a unilateral compensation reduction— only for termination at will, with or without notice. [¶] Defendant could have terminated plaintiff's employment and either reemployed him at the lower rate; or, relegated him to the vast ranks of unemployed aerospace executives. However, defendant took the humane, and what it thought to be legal course of action. The result is indeed a legal irony. Held: Judgment in favor of plaintiff and against defendant in the amount of $19,820.40 plus interest . . . ."

Defendant filed a timely notice of appeal. The appellate department of the superior court reversed the trial court, stating in its opinion and judgment that the question of whether the power to terminate at will also includes the power to modify the terms of the employment relationship appears to be one of first impression in California. The superior court adopted the majority approach that "an employer's right to terminate an employee at will necessarily and logically includes what may be viewed as a lesser-included right to insist upon prospective changes in the terms of that employment as a condition of continued employment," and an employee who continues employment after notice of the modification impliedly accepts such modification. The court further reasoned that the majority rule is fair to both the employer and employee: "If the term of the employment is at-will and either party can terminate the agreement at any time for any reason, a change in the compensation rate effectively constitutes a negation of the old contract and becomes an offer of new employment at the new rate. Continued service by the employee constitutes acceptance of the new offer. Consideration is present on both sides; the employee gives up some wage compensation, and the employer gives the employee the opportunity for continued employment. If the employee does not wish to accept the new employment offer, the employee is free to leave the company. Continued service by the employee reasonably implies acceptance by the employee of the new wage amount." The superior court also found plaintiff's mitigation of damages argument without merit: "This argument is unpersuasive and without support in fact. Had appellant simply terminated respondent's employment, respondent

would have had no action against appellant. Therefore, there were no damages which respondent could lessen."

After the appellate department's judgment became final on July 23, 1997, we issued an order transferring cause on our own motion on August 14, 1997, pursuant to California Rules of Court, rule 62(a). The parties have filed briefs and oral argument has been had thereon. ■ As stated by appellant, the only issue on appeal is whether DiGiacinto's continued employment with Ameriko-Omserv after being notified of a reduction in wages created a new employment contract between the parties by which DiGiacinto is bound. Although this issue appears to be one of first impression in California, we resolve it consistent with the approach of the majority of courts which have addressed this issue, and consistent with well-established principles of law in California.

## DISCUSSION

■ "Labor Code section 2922 provides: 'An employment, having no specified term, may be terminated at the will of either party on notice to the other. Employment for a specified term means employment for a period greater than one month.' . . . The statute creates a presumption of at-will employment which may be overcome 'by evidence that despite the absence of a specified term, the parties agreed that the employer's power to terminate would be limited in some way, e.g., by a requirement that termination be based only on "good cause." [Citations.]' " (*Haycock* v. *Hughes Aircraft Co.* (1994) 22 Cal.App.4th 1473, 1488 [28 Cal.Rptr.2d 248].) "The California Supreme Court has held that the presumption of at-will employment exists because of public policy considerations. In *Consolidated Theatres, Inc.* v. *Theatrical Stage Employees Union* (1968) 69 Cal.2d 713, 727, footnote 12 . . . , the court held: 'Contracts of employment wherein the only consideration is the services to be performed thereunder and which are silent as to duration, are terminable at will upon reasonable notice *without regard to duration.* [Citations.] Special policy considerations require this result. "[T]he courts have not deemed it to be their function . . . to compel a person to accept or retain another in his [or her] employ, nor to compel any person against [her or] his will to remain in the employ of another. Indeed, they have consistently held that in such a confidential relationship, the privilege [to terminate] is absolute, and [the] presence of ill will or improper motive will not destroy it." [Citation.]' " (22 Cal.App.4th at pp. 1488-1489.)

"There is, of course, a strong common law presumption that an employee may be demoted at will. Since it is presumed that an employee may be discharged at will (Lab. Code, § 2922), the at-will presumption would surely

apply to lesser quantums of discipline as well." (*Scott* v. *Pacific Gas & Electric Co.* (1995) 11 Cal.4th 454, 464-465 [46 Cal.Rptr.2d 427, 904 P.2d 834].) ■ Thus, "[i]t is apparent that continuous employment is not a 'benefit of the agreement' where the employment relationship is strictly at will. The 'legitimate expectations' of employee and employer in an at-will employment relationship can be no more than the continuation of employment until one party or the other decides to terminate the relationship. . . . Moreover, the privilege to terminate may be exercised '*without regard to [the] duration*' of the at-will employment relationship. [Citation.] [¶] Simply stated, where the at-will employment relationship is terminated, the employee cannot complain about a deprivation of the benefits of continued employment, for the agreement never provided for a continuation of its benefits in the first instance. To hold otherwise, in our opinion, would constitute an unwarranted judicial intrusion upon the fundamental public policy of this state as expressed in Labor Code section 2922 and dramatically upset the reasonable expectations of the parties to an at-will agreement of employment." (*Hejmadi* v. *AMFAC, Inc.* (1988) 202 Cal.App.3d 525, 547 [249 Cal.Rptr. 5].)

■ In cases involving employee benefits, such as pension plans and stock options, the rule has developed that the offer of such bonuses constitutes an offer for a unilateral contract, which is accepted if the employee continues in employment after the offer. As explained in *Newberger* v. *Rifkind* (1972) 28 Cal.App.3d 1070 [104 Cal.Rptr. 663, 57 A.L.R.3d 1232], involving stock options, " '[A] bonus is not a gift or gratuity, but a sum paid for services, or upon a consideration or in addition to that which would ordinarily be given.' " (*Id.* at p. 1073.) "Consideration is inherent where stock options are granted to employees and the employee continues employment knowing of the options . . . , and no additional consideration in money or property is required. . . . [¶] Furthermore, in finding consideration for pensions or other benefits, the courts do not distinguish between an inducement to continue employment and an inducement to begin employment. . . . '. . . Continuing an employment to which one is not bound by contract is as clearly consideration as is entering the employment in the first place.' " (*Id.* at pp. 1073-1074.) Moreover, "[n]o express, formal request for either a promise or for an act is required for us to find a contract supported by consideration. . . . [¶] In the case before us the bargain was implied from the circumstances, and there was an implied request by the optionors that the optionees continue the act of remaining employees in exchange for the granting of the options. No formal bargain or offer was necessary." (*Id.* at pp. 1074-1075, fn. omitted.) In fact, California "treats this situation as an offer for a unilateral contract." (*Id.* at p. 1074, fn. 4; see also *Chinn* v. *China Nat. Aviation Corp.* (1955) 138 Cal.App.2d 98, 100-101 [291 P.2d 91].)

Although there is no case directly on point in California, there is authority from other jurisdictions that an employer of an at-will employee can unilaterally change the compensation agreement without being in breach of the employment agreement. The underlying principle appears to be that with respect to an at-will employee, the employer can terminate the old contract and make an offer for a unilateral contract under new terms. Thus, the Court of Appeals of Oregon stated in *Albrant* v. *Sterling Furniture Co.* (1987) 85 Or.App.272 [736 P.2d 201]: "It is well established in Oregon that, without some contrary agreement, an employment contract is terminable at the will of either party. [Citation.] That means that an employer ordinarily may discharge an employee for any reason and at any time. [Citation.] It follows that an employer may also modify the employment contract so long as the modification applies only prospectively. An employee impliedly accepts such modifications by continuing employment after the modification." (*Id.* at p. 203, fn. omitted; see also *Brett* v. *City of Eugene* (1994) 130 Or.App. 53 [880 P.2d 937, 939].) The foregoing rule in *Albrant* was adopted by the court in *Cotter* v. *Desert Palace, Inc.* (9th Cir. 1989) 880 F.2d 1142, 1145, applying Nevada law; by the Court of Appeals of New Mexico in *Stieber* v. *Journal Pub. Co.* (1995) 120 N.M. 270 [901 P.2d 201]; and by the Florida Court of Appeal in *Martin* v. *Golden Corral Corp.* (Fla.Dist.Ct.App. 1992) 601 So.2d 1316, 1317.

Other courts have reached conclusions consistent with that in *Albrant* but have applied different reasoning. (See *Facelli* v. *Southeast Marketing Co.* (1985) 284 S.C. 449 [327 S.E.2d 338, 339] [employee held to have impliedly consented to changed compensation rate and was estopped from seeking damages after notice of change]; *Nichols* v. *Waterfield Financial Corp.* (1989) 62 Ohio App.3d 717 [577 N.E.2d 422, 423] [absent application of equitable doctrines such as detrimental reliance, terms and conditions of at-will contract can be prospectively changed without consideration].)

The Supreme Court of Texas held in *Hathaway* v. *General Mills, Inc.* (Tex. 1986) 711 S.W.2d 227 [69 A.L.R.4th 1139], that "Generally, when the employer notifies an [at-will] employee of changes in employment terms, the employee must accept the new terms or quit. If the employee continues working with knowledge of the changes, he has accepted the changes as a matter of law." (711 S.W.2d at p. 229; see also *Burlington Northern Railroad Co.* v. *Akpan* (Tex. App. 1996) 943 S.W.2d 48, 50.)

The *Albrant* line of cases is characterized by the New Mexico court in *Stieber* v. *Journal Pub. Co., supra,* 901 P.2d 201, as representing the majority rule. "Under this rule, accepted in the majority of jurisdictions that have considered the problem, an employer's right to terminate an employee

at will necessarily and logically includes what may be viewed as a lesser-included right to insist upon prospective changes in the terms of that employment as condition of continued employment." (901 P.2d at p. 204.)

Thus, the majority line of cases supports the proposition that as a matter of law, an at-will employee who continues in the employ of the employer after the employer has given notice of changed terms or conditions of employment has accepted the changed terms and conditions. Presumably, under this approach, it would not be legally relevant if the employee also had complained, objected, or expressed disagreement with the new offer; as long as the employee continued in employment with notice of the new terms, the employee has no action for breach of contract as a matter of law. This is so because the old contract has been expressly or impliedly terminated by the employer's modification. The modification constitutes, in legal effect, both the termination of the old contract and the offer of a new contract. Thus, although the employer may properly discharge the employee altogether under such circumstances, the modification of the terms or conditions of employment also constitutes a new offer to the employee of a unilateral contract.

"A minority approach, exemplified by one case, *Bartinikas* v. *Clarklift of Chicago N., Inc.*, 508 F.Supp. 959, 961 (N.D.Ill.1981), holds that if the employee rejects the proposed modification, then the employer can either discharge the employee or abandon the proposed modification. The *Bartinikas* approach focuses on the proposition that there cannot be an effectively modified contract unless there is both an offer of modification by the employer and an acceptance of that modification by the employee. *Id.* at 961. We find that this focus is overly legalistic and does not lend itself to practical application. Although the *Bartinikas* case states that its approach is consistent with 'modern notions of fairness in the workplace,' *id.*, we find such statement illogical in light of the court's later concession that the employer can fire any employee who does not accept the proposed modification. *Id.* Thus, the *Bartinikas* approach encourages employers to fire employees, an approach that we hardly believe is in accordance with notions of fairness in the workplace. Rather, we adopt the majority approach as more enlightened as well as logical." (*Stieber* v. *Journal Pub. Co., supra*, 901 P.2d 201, 204.)

More recently, the court that produced *Bartinikas* repudiated it. The court in *Schoppert* v. *CCTC Intern., Inc.* (N.D.Ill. 1997) 972 F.Supp. 444 stated it was reluctant to follow *Bartinikas* for several reasons: "First, the cases it cites do not support the proposition that an employer in an at-will relationship cannot impose changes upon its employees as a condition of

continued employment. [*People* ex rel.] *Sterba* [v. *Blaser* (1975) 33 Ill.App.3d 1 [337 N.E.2d 410]], the first case cited, involves an employment relationship that was not at will. This difference from the present case (and *Bartinikas*) is crucial. As noted by the Seventh Circuit in *Curtis 1000, Inc. v. Suess*, 24 F.3d 941 (7th Cir.1994), the continuation of the employment relation does *not* constitute consideration for a modification when the employment is not at will, because continued performance on both sides is already a term of the original contract. [Citation.] By contrast, neither party to an at-will relationship has any obligation to perform in the future, and so doing so *can* provide valuable consideration for a modification of the contract. Because *Sterba* did not involve at-will employment, it is not applicable here. [¶] Nor does *Simpson* [v. *Norwesco, Inc.* (8th Cir. 1978) 583 F.2d 1007 [applying Illinois law]] provide strong support. It, too, relies on *Sterba*. The only other Illinois case *Simpson* cites for the proposition that an employer may not unilaterally change the terms of employment is *Cieslak v. Dahlstrom Mach. Works, Inc.*, 19 Ill.App.3d 995, 312 N.E.2d 654 (1st Dist.1974), a case on accord and satisfaction, of which only the abstract was published. Both of the cases cited by *Bartinikas* are weak support for its sweeping language." (972 F.Supp. at p. 448, fn. omitted.)

While the court in *Schoppert* did not expressly adopt the rule that an at-will employee who continues to work after notice of modification of terms of employment has accepted the modifications *as a matter of law*, the court nevertheless granted summary judgment in favor of the employer as to claims involving certain modifications even though the employee verbally objected to the modifications. The court explained: "Even crediting Schoppert's version that he 'objected continually' to the Modification, as we must on a motion for summary judgment, his actions in continuing to work for over two and a half years, without any demonstration that CCTC might reconsider its ultimatum to him, belie those verbal objections. Schoppert has not indicated that he ever told anyone at CCTC that he would only work under the pre-1991 terms, or that his continued performance was in any way conditioned on the retention of his earlier commission structure. Nor is there any evidence that the 1991 Modification remained open to further negotiation after the December 1991 meeting. In these circumstances, Schoppert's continuing to work for over two and a half years while receiving commissions under the new structure must be seen in legal terms as an acceptance of the 1991 Modification, grudging and protest-filled as that acceptance may have been. The old saw 'actions speak louder than words' has more than a grain of truth to it, and we adhere to it where, as here, a party's words are contradicted by his actions." (*Schoppert* v. *CCTC Intern., Inc., supra*, 972 F.Supp. at p. 447.)

With respect to the issue of DiGiacinto's acceptance of the terms of the new contract as set out in Ameriko-Omserv's January 30, 1995, letter, it

is not necessary for us here to choose between the approach of the Texas court in *Hathaway* (where continuation of work under the modified terms constitutes acceptance as a matter of law), or the approach of the district court in *Schoppert*. Under either approach to the issue, the evidence in this case is undisputed and permits only the conclusion that DiGiacinto accepted the terms set out in the January 30, 1995, letter. Moreover, the January 30, 1995, letter must be considered to constitute the employer's notice of termination of the old at-will employment contract and an offer of a unilateral contract under new terms. Accordingly, under the undisputed facts of this case, DiGiacinto failed to establish any breach of the August 1994 contract; rather, on January 30, 1995, it was validly terminated by Ameriko-Omserv. The municipal court thus erred in finding in plaintiff's favor.

## DISPOSITION

The judgment of the municipal court is reversed and on remand the court is directed to enter judgment in favor of Ameriko-Omserv. Ameriko-Omserv is entitled to costs on appeal.

Woods, J., and Neal, J., concurred.