Filed 2/27/25  Wooten v. Five Keys Schools and Programs CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RAINIE S. WOOTEN,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>FIVE KEYS SCHOOLS AND PROGRAMS et al.,<br><br>        Defendants and Appellants. | A169784<br><br>(City and County of San Francisco Super. Ct. No. CGC-23-606322) |

Five Keys Schools and Programs (Five Keys) appeals from the trial court's denial of its motion to compel arbitration of Rainie S. Wooten's wage and hour class action lawsuit.[1]  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts, as described below, are not in dispute.

Five Keys is a nonprofit organization that offers educational programs, housing, and other services to underserved communities in California.  Five Keys utilizes Paycom, a third-party human resources platform, to distribute and manage employment documents and data.

---

[1] Wooten listed "Does 1 to 100" as additional defendants in her complaint but did not name them during the trial court proceedings, and the parties do not discuss them in their briefs.  Therefore, we do not consider the Does for purposes of this appeal.

1

*Five Keys Employee Handbook and Arbitration Policy*

From 2020 to 2023, Wooten worked in Five Keys' housing program.  On March 1, 2022—about a year and a half into Wooten's employment—Five Keys electronically distributed a 78-page employee handbook through Paycom entitled " 'Employee Handbook – Housing' " (the Handbook) to all housing program employees, including Wooten.

The first four pages of the Handbook contain the table of contents, eight "Part[s]" with 150 total subparts.  One of the subparts listed on the first page of the table of contents is titled "Arbitration Policy"; it is in the same font as all 149 other subparts and is not highlighted or distinguished in any way.

Part 1—"Welcome"—provides background information about Five Keys, including an "Introduction" subpart and a "Legal Stuff We Have To Include" subpart.  The Introduction, located on page seven, states:

> "We prepared this handbook to help employees find the answers to many questions that they may have regarding their employment with Five Keys.  We also want to establish the foundational guidelines that enable us to treat employees with kindness and consistency.  Our intention is to create a positive culture where people feel supported and enjoy working at Five Keys. . . .
>
> [¶] . . .
>
> "Although this handbook is long, it's worth the read!
>
> "Please take the time to read through this handbook.  We encourage you to save an electronic copy of the handbook where you can easily access it in the future."

Also on page seven, just below the "Introduction," the subpart "Legal Stuff We Have To Include" states in relevant part:

"With the sole exceptions of the policies of at-will employment and arbitration, neither this handbook nor any other verbal or written communication by a Five Keys employee or representative is, nor should be considered, an agreement, contract of employment, express or implied, or a promise of treatment in any particular manner in any given situation, nor does it confer any contractual rights whatsoever. . . .

[¶] . . .

"This handbook states only general guidelines. Five Keys may, at any time and in its sole discretion, modify, rescind, delete, add, or vary from anything stated in this handbook, with or without notice, except for the policies of at-will employment and arbitration, which may only be modified by an express written agreement signed by the employee and President/CEO. Five Keys will attempt to provide employees with prompt notification of such changes as they occur."

Pages 10 through 13 of the Handbook contain the "Arbitration Policy" providing in relevant part:

"The Five Keys has established a timely and fair procedure of binding arbitration to resolve disputes that arise out of your employment. As a condition of employment and continued employment, all employees shall agree to submit any complaints or disputes to the arbitration process, as described in this policy. . . .

[¶] . . .

"As a condition of employment at Five Keys, Employee agrees to submit all disputes covered by this Arbitration Policy to final and binding arbitration before an arbitrator rather than a court or jury. In exchange for Employee's agreement to submit all covered disputes to final and binding arbitration, Five Keys likewise agrees to the use of arbitration as the exclusive forum for resolving disputes covered under this Arbitration Policy. Five Keys and Employee agree that covered disputes shall not be resolved by way of court or jury trial, except as otherwise noted."

The Arbitration Policy states it is governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq., FAA). Among the disputes covered by the Arbitration Policy are "any claims arising out of or relating to the employment relationship between Five Keys and Employee," including claims under the Labor Code and related statues. It also contains a class action waiver.

*Wooten Electronically Signed the Handbook*

Three days after the Handbook was distributed, on March 4, 2022, Wooten's supervisor told her at a daily staff meeting that she needed to sign the Handbook in the Paycom application by the end of her shift "or [she] would get written up." Wooten also received a text message after the meeting reminding her to sign the Handbook. No one explained the Handbook or its policies to Wooten, that she needed to read it, or that she was bound by an arbitration policy if she continued employment. Wooten never reviewed the arbitration portion of the Handbook; she did recall reviewing sections concerning dress code and clocking in to work at some point during her employment.

That same day, March 4, Wooten accessed the Handbook through the Paycom application on her cell phone, scrolled to the last page, and affixed her electronic signature to the signature line. The signature line appears beneath the final subpart; it contains no accompanying language indicating what the signature is meant to acknowledge or otherwise signifies. Wooten did not initial or sign the Handbook on any other page and nowhere on the signature page is the arbitration agreement referenced. Wooten understood her signature to be an acknowledgment that she received the Handbook.

*Wooten's Lawsuit and Motion to Compel Arbitration*

Wooten's employment at Five Keys ended in early 2023.

4

On May 5, 2023, Wooten filed a wage and hour class action lawsuit against Five Keys alleging claims for failure to pay minimum and overtime wages, permit meal periods, provide accurate wage statements, or timely pay final wages, as well as unfair business practices based on Labor Code violations. On July 14, 2023, Wooten filed an amended complaint adding a cause of action for rest period violations.

On November 27, 2023, Five Keys filed a motion to compel arbitration and to dismiss or stay Wooten's lawsuit. Five Keys contended the Arbitration Policy was a binding contract to which Wooten expressly agreed by her signature and that her claims were encompassed by the policy. In the alternative, it argued Wooten's continued employment after delivery of the Arbitration Policy constituted implied consent to be bound by its terms.

In support of the motion, Five Keys submitted a copy of the Handbook signed by Wooten, as well as a declaration by its senior human resources director describing the processes of distributing employment documents through Paycom. The declaration stated the Handbook was distributed electronically to all employees and that Wooten "was asked to, and did, electronically sign the Handbook containing the Arbitration Policy."

Wooten opposed the motion on the grounds that Five Keys failed to establish the parties entered into either an express or implied agreement to arbitrate. She contended there was no express arbitration agreement as her signature on the last page of the Handbook without any accompanying acknowledgement language signified only her receipt of the Handbook, not assent to the Arbitration Policy. Wooten also argued there was no implied consent to the Arbitration Policy as she did not have notice that agreeing to arbitration was a condition of continued employment. Wooten submitted a

declaration establishing the facts of her receipt and signing of the Handbook summarized above.

In reply, Five Keys argued it had met its burden to show an implied-in-fact agreement to arbitrate as the Handbook contained reasonable notice that agreeing to arbitration was a condition of continued employment. Five Keys did not submit any further evidence.

On December 20, 2023, after holding a hearing, the trial court denied the motion to compel arbitration in a detailed written order. The court concluded no agreement to arbitrate existed as Wooten had neither expressly nor impliedly consented to the Arbitration Policy. The court framed the issue of implied consent to arbitrate as "whether [Wooten] received adequate notice" that an arbitration agreement was a condition of continued employment and concluded Five Keys had not persuaded the court that Wooten had "sufficient notice to give rise to implied consent."

## DISCUSSION

On appeal, Five Keys argues only that the court erred as to whether there was an implied-in-fact agreement to arbitrate based upon the provision of the Handbook and Wooten's continued employment thereafter. For the following reasons, we affirm.

We review de novo whether an arbitration agreement existed where, as here, the material facts are not in dispute. (*Serafin v. Balco Properties Ltd., LLC* (2015) 235 Cal.App.4th 165, 173 ["Because there are no facts in dispute, the existence of a contract is a question we decide de novo."]; accord, *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 (*Pinnacle*); *Diaz v. Sohnen Enterprises* (2019) 34 Cal.App.5th 126, 129 (*Diaz*); *Harris v. TAP Worldwide, LLC* (2016) 248 Cal.App.4th 373, 380 (*Harris*).)

6

The party seeking to compel arbitration—in this case, Five Keys—bears the burden of proving the existence of an arbitration agreement. (*Pinnacle*, *supra*, 55 Cal.4th at p. 236.) The enforceability of an arbitration agreement is determined pursuant to state contract law even where, as here, the agreement states it is governed by the FAA. (*Ibid.* ["In California, '[g]eneral principles of contract law determine whether the parties have entered a binding agreement to arbitrate.' "].)

To prove the existence of an implied-in-fact agreement to arbitrate, the employer must first show it provided adequate notice. (See *Diaz, supra*, 34 Cal.App.5th at p. 130 [implied consent may be found "*after notification* that an agreement to arbitration is a condition of continued employment" (italics added)]; see also *Craig v. Brown & Root, Inc.* (2000) 84 Cal.App.4th 416, 420–422 (*Craig*) [finding implied-in-fact acceptance where employer twice mailed notices of arbitration agreement to employee].) And while an employer may unilaterally change the terms of at-will employment after an employee has been hired (*Diaz*, at p. 131), it can only do so "upon reasonable and fair notice." (*Serpa v. California Surety Investigations, Inc.* (2013) 215 Cal.App.4th 695, 708 (*Serpa*)). Simply put, if and only if adequate notice of an arbitration agreement was provided can continued employment constitute acceptance. (*Diaz*, at p. 130 [continued employment constitutes implied consent]; accord, *Pinnacle, supra*, 55 Cal.4th at p. 236; *Craig*, at p. 420.)

The outcome of this case therefore turns on whether Wooten received reasonable and fair notice that agreeing to the Arbitration Policy was a condition of continued employment.[2] (See *Diaz, supra*, 34 Cal.App.5th at

---

[2] Though we are conducting a de novo review, we note that Five Keys' assertion that the trial court applied a heightened notice requirement is baseless. Five Keys points, out of context, to the court's references to " 'clear indication' " and " 'clear notice.' " When considered in context, it is apparent

7

p. 130; *Serpa*, *supra*, 215 Cal.App.4th at p. 708.)  Contrary to Five Keys' assertion that the Handbook contained adequate notice, and reviewing this issue de novo, we do not find that Wooten was provided adequate notice.

A review of the cases cited by Five Keys does not reveal any cases in which the courts have found an implied-in-fact agreement to arbitrate under circumstances equivalent to those presented here.

We begin with *Craig*, *supra*, 84 Cal.App.4th 416, as Five Keys relies primarily on this case in support of its position.  In *Craig*, the employer established a new dispute resolution program and mailed a memorandum to all employees stating: "The enclosed brochure explains the procedures as well as how the Dispute Resolution Program works as a whole.  Please take the time to read the material.  IT APPLIES TO YOU.  It will govern all future legal disputes between you and the Company that are related in any way to your employment." (*Id*. at p. 419.)  The brochure referenced in the memorandum, and sent with the memorandum, explained the dispute resolution program, including the arbitration process.  (*Ibid*.)  The appellate

---

the trial court properly framed the issue as "whether [Wooten] received adequate notice," and answered that question in the negative by finding she had not received "sufficient notice to give rise to implied consent."  Further, the court merely contrasted *Diaz*, *supra*, 34 Cal.App.5th 126, by noting the employees in that case "were provided with *a* clear notice" of the new arbitration agreement.  This was not an "enhanced notice" requirement.

We also readily dispose of Five Keys' argument that the court "apparently fused" the concepts of contract formation with factors relevant to the defense of unconscionability.  As Five Keys acknowledges, the trial court expressly stated Wooten did not raise an unconscionability defense.  And the trial court did not proceed to analyze unconscionability at any point in its order.  That the court noted some facts in Wooten's declaration " 'could be suggestive of procedural unconscionability,' " and went on to discuss "the circumstances surrounding contract formation," does not mean the trial court erroneously fused the two issues.

court concluded that evidence of mailing was substantial evidence for the presumption of delivery and receipt (despite the employee denying receipt) and that they provided adequate notice; therefore, her continued employment constituted an implied-in-fact acceptance of the binding arbitration agreement. (*Id*. at pp. 420–422.)

Here, there is no dispute that Wooten received the Handbook but did not review the arbitration agreement. Five Keys asserts that, under *Craig*, Wooten's failure to review the Arbitration Policy is irrelevant. While we agree an employee need not have read an arbitration policy to have been bound by it (see *Pinnacle, supra*, 55 Cal.4th at p. 236 ["An arbitration clause within a contract may be binding on a party even if the party never actually read the clause."]), an employer still must provide adequate notice of said policy. Wooten's failure to read the buried policy does not absolve Five Keys of its obligation to provide "reasonable and fair notice" of the agreement to arbitrate (see *Serpa, supra*, 215 Cal.App.4th at p. 708) and *Craig* provides no support for the proposition that the notice in this case was adequate. To the contrary, the employer in *Craig* mailed a standalone brochure exclusively concerning dispute resolution along with a separate memorandum stating arbitration governed all future legal disputes related to employment and, in all capital letters, that it "APPLIES TO YOU." (*Craig, supra*, 84 Cal.App.4th at p. 419.)

The memorandum in *Craig* is analogous to a separate acknowledgment form accompanying an employee handbook. (*Mendoza v. Trans Valley Transport* (2022) 75 Cal.App.5th 748, 790 (*Mendoza*).) Here, there was no separate acknowledgment form, agreement, or memorandum. Wooten was merely told she had to sign the Handbook on Paycom by the end of her shift; in response, Wooten scrolled through the 78-page Handbook—on her cell

9

phone—to sign the last page. The signature line did not contain any language explaining what Wooten's signature meant or whether it bound her to any specific policy, and she reasonably understood it to mean only that she had received the Handbook. (See *ibid.* ["Unlike the memoranda in *Craig* that provided clear notice of the alternative dispute program, the acknowledgment forms here did not mention the Arbitration Policy."].) And so, Five Keys did not meet its "obligation to [provide] reasonable and fair notice" of the change in the terms of Wooten's employment. (See *Serpa, supra*, 215 Cal.App.4th at p. 708; see also *Mendoza*, at pp. 788–791 [rejecting employer's contention that employee entered into implied-in-fact arbitration agreement merely by continuing in employment after receiving a copy of employee handbook containing arbitration policy].)

Five Keys' reliance on *Davis v. Nordstrom, Inc.* (9th Cir. 2014) 755 F.3d 1089 (*Davis*) is similarly misplaced. In *Davis*, the employee accepted employment after receiving a handbook stating certain disputes were subject to arbitration. (*Id.* at p. 1093.) Thereafter, the employer modified the arbitration agreement and sent letters to employees to notify them of the change. (*Id.* at p. 1092.) The letters expressly stated the employer was updating its preexisting dispute resolution program and wanted to ensure employees had the current version; the updated dispute resolution program, including the arbitration agreement, accompanied the letters. (*Ibid.*) Hence, the letters "satisfied the minimal requirements under California law for providing employees with reasonable notice of a change to its employee handbook." (*Id.* at p. 1094.) As in *Craig*, and unlike the case before us, the employee in *Davis* was provided a standalone document providing notice of the arbitration agreement along with the standalone dispute resolution agreement. (*Davis*, at p. 1094; *Craig, supra*, 84 Cal.App.4th at p. 422.)

Of course, an arbitration agreement need not be a standalone document to be enforceable.  (See *Harris*, *supra*, 248 Cal.App.4th at pp. 383–384 [employee consented to arbitration agreement in employee handbook and its appendix by commencing work after acknowledging receipt of both].)  But Five Keys' reliance on *Harris* for the proposition that notice to Wooten was adequate is not persuasive as, in *Harris*, the employee signed an acknowledgement form that "included acknowledging receiving *both* the Employee Handbook and the attached arbitration agreement"—no such acknowledgment was signed by Wooten.  (*Id.* at p. 383.)  Further, the employee handbook in *Harris* stated on page one that it was " 'each employee's responsibility to read, understand and follow the provisions of this Handbook.' "  (*Id.* at p. 377.)  Here, there was no language indicating the employees had a responsibility to read or understand the provisions in the Handbook; rather, the Introduction—which appeared only on page seven— stated the Handbook was "worth the read," and asked employees to "Please take the time to read through this handbook."  Finally, although the table of contents in both cases referenced arbitration, the subject heading in *Harris* referred to " '**BINDING ARBITRATION OF CLAIMS**' " (*id.* at p. 383), whereas the table of contents here referenced an "Arbitration Policy"—which does not inherently indicate it was either binding, as in *Harris*, or an *agreement* to arbitrate—in a font that was neither bolded nor capitalized and appeared identical to the other 149 subparts.  The absence of these factors in this case sets it apart from *Harris*.

The remaining cases cited by Five Keys concerning implied-in-fact agreements in the employment context are also inapposite.  (See *Diaz, supra*, 34 Cal.App.5th at pp. 129–131 [implied-in-fact arbitration agreement existed where employer informed employee at in-person meeting about arbitration

agreement and employee was personally told twice that continued employment would itself constitute acceptance of the agreement]; *Asmus v. Pacific Bell* (2000) 23 Cal.4th 1, 15 [employees accepted new employment terms by continuing employment after employer terminated original policy and "offered continuing employment [under modified policy] to employees who received notice and signed an acknowledgement to that effect"]; *DiGiancinto v. Ameriko-Omserv Corp.* (1997) 59 Cal.App.4th 629, 632, 637–639 [no breach of employment contract where employee continued in employment after employer notified him both by letter and orally of changed employment terms].)

Finally, Five Keys cites *Pinnacle, supra*, 55 Cal.4th at page 245, for the proposition that actual notice is not required. *Pinnacle* concerned an *express* arbitration agreement contained in a condominium property's easements, restrictions, and covenants. (*Id.* at pp. 232-233.) In that context, the California Supreme Court found an express agreement to arbitrate existed, noting an "important feature . . . of condominium developments is that actual notice is not required for enforcement of a recorded declaration's terms against subsequent purchasers." (*Id.* at pp. 238, 246.) That the Court "decline[d] to read additional unwritten procedural requirements, such as actual notice and meaningful reflection, into [an] arbitration statute" that " 'govern[s] enforcement actions filed by an owner or an association' " (*id.* at pp. 244–245) is of no moment for our purposes. Rather, as we have noted, and consistent with cases concerning implied consent in the employment context, our decision turns on the lack of "reasonable and fair" notice.[3] (See *Serpa, supra*, 215 Cal.App.4th at p. 708; *Davis, supra*, 755 F.3d at p. 1094.)

---

[3] Similarly, we find unconvincing Five Keys' citations to *Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 914, and *Doctor's*

12

For these reasons, we conclude Five Keys has failed to carry its burden to prove the existence of an implied-in-fact agreement to arbitrate with Wooten. Accordingly, we do not reach Five Keys' arguments concerning the enforceability of the Arbitration Policy.

**DISPOSITION**

The order denying Five Keys' motion to compel arbitration is affirmed. Wooten shall recover costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

---

*Associates, Inc. v. Casarotto* (1996) 517 U.S. 681, 687–688, for the proposition that it was "not required to explain arbitration or specifically highlight or call the arbitration clause to Wooten's attention." Neither case addressed the circumstances surrounding the *existence* of an arbitration agreement, either implied or express, and they are therefore not relevant to the notice requirement at issue here.

13

_____

PETROU, J.

WE CONCUR:

_____

TUCHER, P. J.

_____

RODRÍGUEZ, J.

A169784/*Wooten v. Five Keys Schools*

14